304 F.3d 82
 MARIJUANA POLICY PROJECT, et al., Appellees,
v.
UNITED STATES of America, Appellant.
District of Columbia Board of Elections and Ethics, Appellee.
 No. 02-5133.
 United States Court of Appeals, District of Columbia Circuit.
 Argued September 9, 2002.
 Decided September 19, 2002.
 Filed October 4, 2002.
 
 Appeal from the United States District Court for the District of Columbia (No. 01cv02595).
 Michael S. Raab, Attorney, U.S. Department of Justice, argued the cause for appellant. On the briefs were Roscoe C. Howard, Jr., U.S. Attorney, Mark B. Stern and Alisa B. Klein, Attorneys, U.S. Department of Justice.
 Alexei M. Silverman argued the cause for appellees. With him on the brief were Gregg H. Levy and James M. Garland.
 Julie M. Carpenter was on the brief for amicus curiae DKT Liberty Project in support of appellees.
 Before: TATEL and GARLAND, Circuit Judges, and WILLIAMS, Senior Circuit Judge.
 Opinion for the Court filed by Circuit Judge TATEL.
 TATEL, Circuit Judge:
 
 
 1
 Through a rider to the District of Columbia appropriations act, Congress denied the District authority to "enact ... any law" reducing penalties associated with possession, use, or distribution of marijuana. The district court declared the rider unconstitutional, finding that it interfered with D.C. citizens' First Amendment rights to use the city's ballot initiative process to enact medical marijuana legislation. Because Article I of the Constitution gives Congress "exclusive" power to define the District of Columbia's legislative authority, and because the legislative act—in contrast to urging or opposing the enactment of legislation—implicates no First Amendment concerns, we reverse.
 
 I.
 
 2
 "Congress shall have Power ... [t]o exercise exclusive Legislation in all Cases whatsoever, over ... the Seat of the Government of the United States." U.S. CONST. art. 1, § 8, cl. 17. Pursuant to this authority, Congress exercises "all police and regulatory powers which a state legislature or municipal government would have in legislating for state or local purposes." Palmore v. United States, 411 U.S. 389, 397, 93 S.Ct. 1670, 1676, 36 L.Ed.2d 342 (1973). For most of the first 171 years following the District of Columbia's 1802 incorporation, Congress exercised "exclusive" authority over the District through direct legislation and appointment of local governors with no input from residents. Clarke v. United States, 886 F.2d 404, 406 (D.C.Cir.1989), vacated as moot, 915 F.2d 699 (D.C.Cir. 1990) (en banc).
 
 
 3
 Responding to calls for local self-government, Congress enacted the District of Columbia Self-Government and Governmental Reorganization Act in 1973, Pub.L. No. 93-198, 87 Stat. 774 (1973) (codified as amended at D.C.CODE ANN.§ 1-201.01 et seq.), granting residents the right to elect a mayor and a D.C. Council. This "Home Rule Act" delegates to the D.C. Council "legislative power" over "all rightful subjects of legislation." D.C.CODE ANN. §§ 1-203.02, 1-204.04. The Act then lists certain matters that are not rightful subjects: The District may not impose a commuter tax on non-residents' income; it may not regulate federal courts, D.C. local courts, or the Commission on Mental Health; and it may not permit the construction of buildings taller than then-existing height restrictions. D.C.CODE ANN. § 1-206.02(a)(4)-(a)(8). Even with respect to rightful subjects of legislation, D.C. Council enactments become law only if Congress declines to pass a joint resolution of disapproval within thirty days (or sixty days in the case of criminal laws). D.C.CODE ANN. § 1-206.02(c)(1)-(c)(2). Moreover, Congress expressly reserves the right to enact legislation concerning the District on any subject and to repeal D.C. Council enactments at any time. D.C.CODE ANN. § 1-206.01. Finally, the Act prohibits District officers and employees from expending any funds unless authorized to do so by Congress. D.C.CODE ANN. § 1-204.46.
 
 
 4
 In 1978, the D.C. Council established (and Congress did not disapprove of) a ballot initiative process. Initiative, Referendum, and Recall Charter Amendments Act of 1977, D.C.CODE ANN. § 1-204.101 et seq. An initiative proposal approved by a majority of the electorate "shall be an act of the Council." D.C.CODE ANN. § 1-204.105. The initiative process is subject to the same legislative restrictions as the D.C. Council, including the congressional veto power and substantive limits on taxing commuters, authorizing tall buildings, and regulating federal and local courts. See Convention Ctr. Referendum Comm. v. D.C. Bd. of Elections & Ethics, 441 A.2d 889, 897 (D.C.1981) (en banc).
 
 
 5
 The D.C. Board of Elections and Ethics, the gatekeeper for the initiative process, is charged with determining whether a proposed measure constitutes a "proper subject" for an initiative. D.C.CODE ANN. § 1-1001.16(b)(1). The Board of Elections may not accept initiatives that conflict with powers granted to the D.C. Council in the Home Rule Act, that authorize discrimination prohibited by the D.C. Human Rights Act, D.C.CODE ANN. § 2-1401.01 et seq., or that negate or limit budget acts of the D.C. Council. D.C.CODE ANN. § 1-1001.16(b)(1). Only after the Board accepts a proposal under the "proper subject" standard may proponents begin to gather signatures. D.C.CODE ANN.§ 1-1001.16(c)(1)-.16(j). If five percent of registered voters sign a petition supporting the proposed initiative, the Board certifies it for inclusion on the ballot in the next election. D.C.CODE ANN. § 1-1001.16(i), 1-1001.16(p)(1).
 
 
 6
 Appellee, the Marijuana Policy Project ("MPP"), submitted the Medical Marijuana Initiative of 2002 to the Board of Elections for certification as a proper subject. According to its summary statement, the Initiative would have permitted:
 
 
 7
 patients suffering from cancer, AIDS, and other debilitating medical conditions to legally use marijuana for the alleviation of their symptoms, provided they have the approval of a licensed physician and adhere to the other limitations and safeguards established by this measure. This measure also protects from sanctions physicians who recommend marijuana to patients who might otherwise benefit from it.
 
 
 8
 The Board of Elections refused to certify the proposal, citing the so-called Barr Amendment, a rider to the D.C. appropriations act. Named for its sponsor, Congressman Bob Barr, the Amendment states that: "None of the funds contained in this Act may be used to enact or carry out any law, rule, or regulation to legalize or otherwise reduce penalties associated with the possession, use, or distribution of any schedule I substance under the Controlled Substances Act ... or any tetrahydrocannabinols derivative." Pub.L. No. 107-96, § 127(a), 115 Stat. 923 (2001).
 
 
 9
 Arguing that the Barr Amendment violates the First Amendment, the MPP filed suit in the United States District Court for the District of Columbia. On cross motions for summary judgment, the district court declared the Barr Amendment unconstitutional, holding that it interferes with "core political speech." Marijuana Policy Project v. D.C. Bd. of Elections & Ethics, 191 F.Supp.2d 196, 216 (D.D.C. 2002). The court permanently enjoined the Board from refusing to certify the Initiative, and the United States now appeals. Our review is de novo. See Troy Corp. v. Browner, 120 F.3d 277, 281 (D.C.Cir.1997) (summary judgment reviewed de novo).
 
 II.
 
 10
 We begin with some preliminary observations. First, through the Home Rule Act, Congress delegated some, but not all, of its Article I "exclusive" legislative authority over the District of Columbia to the D.C. Council. For instance, only Congress, not the D.C. Council, may impose a commuter tax or permit buildings above a certain height. The Barr Amendment's ban on expenditures "to enact ... any law ... to ... reduce penalties associated with" marijuana adds another item to this list of matters that, in the words of the Home Rule Act, are not "rightful subjects of legislation." The Amendment says only that Congress, not the D.C. Council, may reduce marijuana penalties. Second, the Barr Amendment's limitation on local legislative power extends not only to the D.C. Council, but also to the ballot initiative process — "a power of direct legislation by the electorate." Convention Ctr. Referendum Comm., 441 A.2d at 897 (internal quotation marks and citation omitted); see D.C.CODE ANN. § 1-204.105; Biddulph v. Mortham, 89 F.3d 1491, 1497 (11th Cir. 1996) ("[I]n the initiative process people do not seek to make wishes known to government representatives but instead to enact change by bypassing their representatives altogether."). The Amendment thus denies D.C. voters any authority to step into the D.C. Council's shoes and reduce marijuana penalties themselves. Finally, as is evident from the parties' fine briefs, this case involves not the pros and cons of medical marijuana, but rather a straightforward constitutional question: Does the First Amendment restrict Congress's ability to withdraw the District's authority to reduce marijuana penalties?
 
 
 11
 Urging us to answer this question affirmatively, the MPP argues that the Barr Amendment proscribes "core political speech," i.e., that it prevents the MPP from "conducting a petition drive ..., speak[ing] at public Board hearings regarding the initiative ..., [and] signing a formal petition to place the initiative on the ballot." Appellees' Brief at 12. The Barr Amendment, however, restricts no speech; to the contrary, medical marijuana advocates remain free to lobby, petition, or engage in other First Amendment-protected activities to reduce marijuana penalties. The Barr Amendment merely requires that, in order to have legal effect, their efforts must be directed to Congress rather than to the D.C. legislative process.
 
 
 12
 The MPP, moreover, cites no case, nor are we aware of one, establishing that limits on legislative authority — as opposed to limits on legislative advocacy — violate the First Amendment. This is not surprising, for although the First Amendment protects public debate about legislation, it confers no right to legislate on a particular subject. For example, by enacting expressly preemptive statutes, Congress limits state authority to legislate on the same subject. See, e.g., Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383, 112 S.Ct. 2031, 2036-37, 119 L.Ed.2d 157 (1992) (federal statute, providing that no state shall "enact[] or enforc[e] any law, rule, regulation, standard, or other provision" relating to certain airline services, preempts state law); Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 91, 103 S.Ct. 2890, 2896-97, 77 L.Ed.2d 490 (1983) (Employee Retirement Income Security Act of 1974, providing that ERISA shall supersede "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," preempts state law); Jones v. Rath Packing Co., 430 U.S. 519, 530 n. 17, 97 S.Ct. 1305, 1312 n. 17, 51 L.Ed.2d 604 (1977) (federal statute, providing that meat inspection requirements "in addition to, or different than, those made under this Act may not be imposed by any State or Territory or the District of Columbia," preempts state law). Yet no one would argue that such limitations violate the First Amendment rights of state voters who supported the preempted legislation. If Congress can preempt state legislation without running afoul of the First Amendment, then, in view of Congress's "exclusive" Article I authority over the District of Columbia, it can certainly limit D.C. legislative authority without violating D.C. voters' First Amendment rights.
 
 
 13
 The MPP argues that the Barr Amendment amounts to unconstitutional "viewpoint discrimination" because by prohibiting the District from reducing but not increasing marijuana penalties, it "silences one side of the medical marijuana debate while allowing the other side full access to the District's ballot initiative process." Appellees' Br. at 19. We disagree. For one thing, if the Constitution permits Congress—as it surely does—to reserve for itself "exclusive" authority to enact marijuana legislation, it certainly permits Congress to retain for itself the more limited authority to reduce marijuana penalties. Moreover, the Barr Amendment silences no one; it merely shifts the focus of debate between medical marijuana supporters and their opponents from the D.C. legislative process—the D.C. Council or ballot initiative—to Congress. To be sure, a ballot initiative could be used to increase marijuana penalties, but opponents, including the MPP, may utilize all of their First Amendment-protected tools to resist such efforts. In other words, whatever the issue and wherever the debate occurs, whether over reducing marijuana penalties (in Congress) or increasing penalties (in either Congress or the District), both sides may fully participate. Congress's decision as to where those debates must occur does not implicate the First Amendment.
 
 
 14
 The MPP draws our attention to a line of cases holding that certain limitations connected with ballot initiatives impermissibly restrict private political speech. E.g., Buckley v. American Constitutional Law Foundation, Inc., 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999) (overturning various registration requirements for petition circulators); Meyer v. Grant, 486 U.S. 414, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988) (overturning prohibition on professional petition circulators). In none of these cases, however, did anyone question whether the ballot initiative at issue addressed a proper subject. The cases thus cast no light on the issue before us— whether a legislature can withdraw a subject from the initiative process altogether.
 
 
 15
 The only circuit court we know to have addressed this issue has also concluded that the First Amendment imposes no restriction on the withdrawal of subject matters from the initiative process. In Skrzypczak v. Kauger, 92 F.3d 1050 (10th Cir.1996), the Tenth Circuit held that a state supreme court decision removing an abortion initiative from the ballot did not violate a voter's First Amendment rights:
 
 
 16
 [R]emoving [the proposal] from the ballot... has not prevented [the voter] from speaking on any subject. She is free to argue against legalized abortion, to contend that pre-submission content review of initiative petitions is unconstitutional, or to speak publicly on any other issue.... Moreover, she cites no law, and we find none, establishing a right to have a particular proposition on the ballot.
 
 
 17
 Id. at 1053.
 
 
 18
 Nothing in public forum cases, including the limited public forum cases relied on by the MPP, such as Good News Club v. Milford Central School, 533 U.S. 98, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001) (public schools cannot deny after-school use of facilities to religious programs), and Rosenberger v. Rector & Visitors of University of Virginia, 515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995) (university-funded student publications cannot exclude religious viewpoints), requires a different result. The defining characteristic of traditional and limited public fora, such as streets, parks, public school facilities, and student newspapers, is that they are "devoted to assembly and debate" or "opened for use by the public as a place for expressive activity." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983). Although places designated for the expression of views about legislation—the grounds of the U.S. Capitol, for example, Lederman v. United States, 291 F.3d 36 (D.C.Cir.2002)—share these characteristics, the legislative act itself, i.e., the voting that occurs inside the Capitol, does not. The same is true for the ballot initiative process: That process certainly stimulates First Amendment-protected debate and discussion, but no case holds that the act of voting in a ballot initiative—a legislative act—is itself a public forum.
 
 
 19
 The MPP relies on Legal Services Corp. v. Velazquez, 531 U.S. 533, 121 S.Ct. 1043, 149 L.Ed.2d 63 (2001), which held that Congress could not bar federally funded legal services lawyers from challenging the constitutionality of state or federal welfare statutes. Velazquez, however, has nothing to do with this case not only because the decision rests on limited public forum doctrine, but also because of its unique concern with a "serious and fundamental restriction on advocacy of attorneys and the functioning of the judiciary." Id. at 544, 121 S.Ct. at 1050. In contrast, the Barr Amendment does not prohibit "speech necessary to the proper functioning" of the legislative process. Id. The Amendment merely removes a subject from that process altogether.
 
 
 20
 In sum, the Barr Amendment's limitation on District of Columbia legislative authority restricts no First Amendment right. Ruling otherwise not only would run counter to the very nature of the legislative act, but would require Congress, should it really want to deprive D.C. voters of authority to enact marijuana legislation (as opposed to subsequently overturning their decision to do so), to repeal the initiative process altogether or even the Home Rule Act itself. Mindful of the Supreme Court's admonition against producing "less speech, not more" — in this case, First Amendment-protected activity surrounding the initiative process—by putting the government to an "all-or-nothing choice," Ark. Educ. Television Comm'n v. Forbes, 523 U.S. 666, 680, 118 S.Ct. 1633, 1642, 140 L.Ed.2d 875 (1998), we reverse the district court's decision and vacate its injunction.
 
 
 21
 
 So ordered.